UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CRAIG LEE MILLER,

  Plaintiff,

v.             Case No. 18-cv-1126-pp

CAROL STRAKS,

  Defendant.

---

**ORDER DENYING PLAINTIFF LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. NO. 16), DENYING PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT AGAINST DEFENDANT STRAKS (DKT. NO. 18) AND DENYING MOTION TO APPOINT COUNSEL AND MOTION FOR DEFAULT JUDGMENT (DKT. NO. 19)**

---

  On February 7, 2020, this court screened plaintiff Craig Lee Miller's amended complaint and allowed to him to proceed on an Eighth Amendment claim against defendant Carol Straks. Dkt. No. 12. On April 28, 2020, the plaintiff filed a proposed second amended complaint, in which he names defendant Straks and a new defendant, Total Medical Staffing. Dkt. No. 16. Before the court had an opportunity to screen the second amended complaint, the plaintiff submitted a letter in which he explained that he "had no intention of drop[p]ing the Amended Complaint the Court issued its screening order on 2-7-20." Dkt. No. 17. The plaintiff clarified that he wished only to add Total Medical Staffing as a defendant. Id. Given the plaintiff's letter, the court will construe the second amended complaint as a motion to add Total Medical Staffing as a defendant.

1

Despite asking to add Total Medical Staffing as a defendant, the second amended complaint made no allegations against Total Medical Staffing. The plaintiff says only that Total Medical Staffing was defendant Straks' employer. Dkt. No. 16 at 2. He alleges that Total Medical Staffing eventually terminated Straks' employment "[f]or questionable behavior." Id.

A private corporation that has contracted to provide essential government services, such as health care for prisoners, "cannot be held liable under §1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." Shields v. Ill. Dep't of Corr., 746 F.3d 782, 789 (7th Cir. 2014). The private corporation may not be held liable for the actions of its employees under a theory of *respondeat superior*. Id. (citing Iskander v. Vill. of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982)); see also Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). For a private corporation to be liable under §1983, the plaintiff must allege "that his injury was caused by a [Total Medical Staffing] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy." Id. at 796 (citing Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004)).

The court will assume that Total Medical Staffing has contracted with the state to provide services at its institutions. But the plaintiff does not allege that Straks acted under a Total Medical Staffing policy or custom when she allegedly sexually assaulted him. Quite the opposite, the plaintiff contends that Total Medical Staffing terminated her employment because of her "questionable

2

behavior," although he does not specify the nature of that behavior. The plaintiff seeks to hold Total Medical Staffing vicariously liable for Straks's actions but does not provide a link between her behavior and any corporate policy or custom. The court will deny the plaintiff's request to add Total Medical Staffing as a defendant.

The plaintiff also requests entry of default judgment against defendant Straks. Dkt. No. 18. He asserts that Straks "sent in the executed waiver of service on 3/30/2020 pursuant to Court order," and argues that she would have had sixty days from that date to answer the amended complaint. Id. He asserts that Straks did not timely answer and "has shown no intent to do so." Id.

The plaintiff is correct that Straks executed a waiver of service acknowledging that she was required to answer or otherwise respond within sixty days from March 30, 2020. Dkt. No. 15. But before that sixty days expired, the plaintiff filed his proposed amended complaint. Straks is representing herself, and it may be that she did not answer the amended complaint because she was not sure whether the court was going to allow the plaintiff to amend for a second time. The court also notes that the sixty-day deadline would have expired on May 29, 2020; the plaintiff dated his request for default that same day (dkt. no. 18). Straks' answer could have arrived late in the day on May 29; the plaintiff's motion was premature.

The court will not enter default judgment at this time. The court will give Straks a deadline by which to answer the August 6, 2020 amended complaint

3

(dkt. no. 6). If Straks does not file either an answer, a motion or a request for an extension of time by the end of the day on the date the court sets below, the plaintiff then may file a request for entry of default. Because the court has denied the plaintiff's request for entry of default, he is not entitled to default judgment, and the court will deny that motion. Dkt. No. 19.

At the end of the motion for default judgment, the plaintiff says that "[i]f liability is available," he will retain a lawyer, and if not, he asks the court to appoint him counsel. Id. The plaintiff cites DeShaney v. Winnegago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989); the court is not sure why. That case says nothing about retention of counsel, or appointment of lawyers. The section of DeShaney the plaintiff cites refers to the question of whether the Due Process Clause requires the State to protect its citizens from private actors.

As to appointing a lawyer for the plaintiff, in a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been

4

effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

5

The plaintiff has submitted letters from four lawyers or law firms—Martin Law Office in Oak Creek, Wisconsin; the Blaise & Nitschke firm in Chicago; the Jeff Scott Olson firm in Madison, Wisconsin; and the ACLU in Milwaukee. Dkt. No. 19-1. Attorney Martin indicated that he was declining to represent the plaintiff "for the reasons we discussed today," without explaining those reasons. Id. at 1. While expressing no opinion on the merits of the plaintiff's case, Martin did say that "[a]nother attorney might come to a different conclusion on these facts," and recommended that the plaintiff seek a second opinion. Id. Attorney Nitschke stated only that after reviewing the documents the plaintiff had provided, his office had determined that it could not undertake his representation "at this time." Id. at 2. The Olson firm indicated that regardless of the merits of the plaintiff's claims, its office policy prohibited the firm becoming involved in cases already filed in court. Id. at 3. Finally, the ACLU sent the plaintiff a form letter, advising him that it could not represent him due to limited resources and giving him suggestions for how to obtain help and cautions about deadlines and exhaustion requirements. Id. at 5.

These letters show that the plaintiff has made a reasonable effort to retain counsel on his own. He reached out to firms that appear to have some experience in prisoner litigation. The court cannot tell how the plaintiff articulated his claims to the lawyers, but the court assumes that he was as articulate in communicating with them as he has been with this court. It does not appear that the plaintiff is refusing to hire counsel just because he doesn't want to have to pay the money (although the court notes that the plaintiff was

6

Case 2:18-cv-01126-PP   Filed 07/10/20   Page 6 of 8   Document 20

able to pay a $400 filing fee when he filed this case). The court concludes that the plaintiff has satisfied the first prong of Pennewell.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

Even this early in the case, the court finds that the plaintiff is clear, direct and easy to understand. His complaint laid out his allegations clearly and concisely; the court understands what he believes happened to him. He was able to understand Rule 55 regarding defaults and motions for default judgment, and his motions in that regard were clear. The plaintiff is a highly-experienced litigator in this district; this his twelfth case since April 2004. It is early days in this case. Right now, the court cannot say that the plaintiff is not

7

Case 2:18-cv-01126-PP   Filed 07/10/20   Page 7 of 8   Document 20

fully capable of representing himself. If the litigation becomes more complex, the plaintiff may renew his request.

The court **DENIES** the plaintiff leave to file his second amended complaint, which the court construes as a motion to add Total Medical Staffing as a defendant in this action. Dkt. No. 16. The amended complaint, dkt. no. 6, remains the operative complaint.

The court **DENIES** the plaintiff's request for entry of default against Straks. Dkt. No. 18.

The court **DENIES** the plaintiff's motion for default judgment and request to appoint counsel. Dkt. No. 19.

The court **ORDERS** that defendant Straks must answer or otherwise respond to the amended complaint (dkt. no. 6) by the end of the day on **August 14, 2020**. If the defendant needs additional time, she must file a motion asking for an extension of the deadline *before* the deadline expires. If the defendant does not answer, otherwise respond or seek an extension by the end of the day on August 14, 2020, the plaintiff may request default.

Dated in Milwaukee, Wisconsin this 10th day of July, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**