UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRAIG LEE MILLER,

      Plaintiff,

      v.                              Case No. 18-cv-1126-pp

JUDY SMITH, ROBERT HUMPHREYS,
CAROL STRAKS, GARY HAMBLIN,
JOHN DOE #1–9, TOM POLLARD,
and JANE DOE #1,

      Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 40), DISMISSING DEFENDANTS, DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 44), DENYING AS MOOT PLAINTIFF'S MOTION FOR SCREENING ORDER (DKT. NO. 47), DENYING PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 48) AND ORDERING DEFENDANT TO ANSWER OR OTHERWISE RESPOND TO SECOND AMENDED COMPLAINT**

On February 7, 2020, the court screened Craig Lee Miller's amended complaint and allowed him to proceed on an Eighth Amendment claim against defendant Carol Straks. Dkt. No. 12. The U.S. Marshal served the amended complaint on Straks, dkt. no. 15, but Straks did not respond. The plaintiff moved for default judgment, dkt. no. 18, which the court denied, dkt. no. 20. The court explained that because Straks did not have an attorney, it would give her additional time to respond to the complaint. Id. at 3. The court ordered Straks to answer the amended complaint by August 14, 2020. Id. at 8.

Once Straks had answered the complaint, dkt. no. 23, the court held a telephonic status conference to discuss the case with the parties (neither of

whom were represented by counsel), dkt. no. 25. During the status conference, the court learned that Straks was not a state employee and would not have representation. Dkt. No. 29. On November 12, 2020, the court held a second telephonic status conference with the parties. Dkt. No. 33. The court suggested that either the parties could attempt to mediate their case with a magistrate judge, the plaintiff could file an amended complaint to allege a theory of liability against Straks's former employer (Total Med Staffing) or the court would schedule a jury trial with each party representing him- or herself. Id. Straks explained that she could not afford an attorney to represent her or afford to pay a settlement. Id. The court adjourned the hearing so that it could try to recruit counsel to represent the plaintiff on a limited basis to review the docket and advise the plaintiff of his potential options, including settlement. Id. at 2.

Five days later, the court recruited Attorney Lonnie Story to represent the plaintiff on a limited basis. Dkt. No. 34. The court held a telephonic status conference on January 20, 2021, during which counsel advised that unless the plaintiff intended to file an amended complaint, he believed settlement was the plaintiff's only option. Dkt. No. 37. He requested additional time to speak with the plaintiff about the case and to advise him how to proceed. Id. at 2. The court again adjourned the hearing and set a new status conference for February 23, 2021. Id. At that hearing, counsel reported that he had spoken with the plaintiff at length and had agreed to represent him without limitation. Dkt. No. 39. Counsel asked for thirty days by which to file a second amended

complaint, and the court granted that request. <u>Id.</u> The court ordered the plaintiff to file his second amended complaint by March 26, 2021. <u>Id.</u> at 2.

On that deadline, plaintiff filed a proposed second amended complaint. Dkt. No. 40. The second amended complaint is forty-two pages long and asserts claims against Straks and over a dozen new defendants, including ten unknown John or Jane Doe defendants. <u>Id.</u> at ¶¶10–24. It also seeks injunctive relief against the State of Wisconsin. <u>Id.</u> at ¶¶119–20. It does not name Straks's former employer, Total Med Staffing.

Since filing the second amended complaint, the plaintiff—through counsel—has filed a motion for default judgment (dkt. no. 44), a motion for a screening order (dkt. no. 47) and a motion to strike (dkt. no. 48).

Because none of the new defendants have been served with the second amended complaint (which would not occur until after the court has screened it), they likely are unaware that the plaintiff seeks to sue them. The court will screen the second amended complaint to determine the defendants against whom the plaintiff may proceed and on what claims. The court also will rule on the pending motions.

## I.    Screening the Second Amended Complaint (Dkt. No. 40)

A.    <u>Federal Screening Standard</u>

As the court explained in its original screening order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if it raises claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the second amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the second amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The second amended complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

B.    The Plaintiff's Allegations

    1.    *The Introductory Section of the Complaint and the Relief Sought*

The caption of the second amended complaint names only one defendant—Carol Straks. Dkt. No. 41 at 1. The introductory statement asserts that the plaintiff was repeatedly sexually assaulted when he was seeking medical treatment during his stay at Oshkosh Correctional Institution. Dkt. No. 40 at 1. It alleges that the "defendants"—plural—failed to provide adequate supervision and training to staff, "specifically female nurses," and that the Wisconsin Department of Corrections failed to comply with "common standards within the medical profession." Id. at 1–2. It alleges that the DOC failed to protect "inmates"—plural—from Straks, and estimates that Straks sexually assaulted the plaintiff "on a nearly daily basis between July 2011 and July 2012 while employed at" Oshkosh. Id. at 2. The introductory statement asserts that the "[d]efendants failed to recognize and respond to obvious signs Defendant Straks was grooming male prisoners[ and] had a sexual predator pattern." Id. It asserts that the defendants failed to provide the plaintiff counseling as required under the Prison Rape Elimination Act (PREA), failed to treat his psychological issues caused by Straks's sexual abuse and failed to recognize that Straks "was introducing narcotics and other contraband into the facility" for the purpose of manipulating the plaintiff. Id.

The introductory statement says that the "named defendants" failed to follow federal and state laws and administrative rules. Id. at 1. The plaintiff seeks declaratory relief; $1 million in compensatory damages; "no less than

5

"$100,000" in punitive damages against each defendant; a finding that ongoing harm exists to all persons "still in custody" (without specifying where); the appointment of a special master; a finding that the plaintiff was subject to sexual battery and assault "as the result of the actions of individuals in the employment of the State of Wisconsin;" and fees and costs. Id. at pp. 41-42.

2. *The "Parties to the Action" Section of the Complaint*

The "parties to the action" section of the second amended complaint indicates that the plaintiff currently is incarcerated at Kettle Moraine Correctional Institution. Dkt. No. 40 at ¶9. He was incarcerated at Oshkosh at the time of the events alleged in the second amended complaint. Id. This section of the complaint lists the following individuals as "defendants," although the caption of the second amended complaint makes no mention of them:

- Gary Hamblin, former Secretary of the DOC, who allegedly was responsible for approving and signing all PREA audits for DOC institutions. The plaintiff asserts that Hamblin certified to former Wisconsin Governor Scott Walker that DOC institutions were "in compliance in all regards and meeting all of the requirements of PREA." Id. at ¶10.

- Judy Smith, former Warden at Oshkosh. Id. at ¶19.

- Robert Humphreys, former Warden at Kettle Moraine. Id. at ¶20.

- Tom Pollard, Kettle Moraine Director of Security, who allegedly was responsible "for ensuring PREA compliance." Id. at ¶22.

- Carol Straks, who was a registered nurse working in the Health Services Unit at Oshkosh since at least 2011. Id. at ¶¶23, 48.

- John Doe #1, the Deputy Director for the DOC, who allegedly "is responsible for the overall safe and secure operation of all DOC correctional institutions." Id. at ¶11.

  - John Doe #2, the Assistant Director of Operations, who allegedly directly supervises all DOC Superintendents. The plaintiff asserts that John Doe #2 oversees the budgeting for DOC institutions and "is responsible for PREA compliance and the safe and secure operation of DOC Institutions." Id. at ¶12.

  - John Doe #3, the PREA Coordinator for the DOC, who allegedly was responsible for passing along PREA audit recommendations to Hamblin, Does #1 and 2, and the Wardens and Directors of Security at Oshkosh and Kettle Moraine. Id. at ¶13.

  - John Doe #4, the DOC Health Services Manager. Id. at ¶14.

  - John Doe #5, the Assistant Director of Correctional Services, who allegedly had "direct oversight over DOC Health Services and the Health Services Administrator." Id. at ¶15.

  - John Doe #6, the DOC Chief Clinical Officer. Id. at ¶16.

  - John Doe #7, the DOC Chief Medical Officer. Id. at ¶17.

  - John Doe #8, the DOC Behavioral Health Services Administrator. Id. at ¶18.

  - John Doe #9, the Director of Security at Oshkosh, who allegedly was responsible "for ensuring PREA compliance and that inmates were safe from sexual assault at" Oshkosh. Id. at ¶21.

  - Jane Doe #1, the Nurse Manager for Kettle Moraine. Id. at ¶24.

3.    *Factual Background*[1]

The second amended complaint alleges that the plaintiff had daily contact with Straks, and that the sexual contact between them occurred from July 2011 through July 2012. Dkt. No. 1 at ¶83. The second amended complaint asserts that Straks was a nurse was responsible for administering analgesic ointment rubs to patients to treat their pain and for treating patients in medical services, and that she had authorized and unauthorized access to the health services unit's dispensary for pharmaceutical narcotics. Id. at ¶50. Straks was "charged with applying" an analgesic ointment—an allegedly controlled substance—to the plaintiff's back to treat his pain from previous procedures. Id. at ¶57. Straks allegedly was able to see male incarcerated persons without chaperone or supervision, and was able to be alone with the plaintiff—allegedly kissing and fondling him and engaging in sexual intercourse and oral sex—in the exam rooms of the health services unit. Id. at ¶¶51, 55. The amended complaint alleges that Straks would volunteer to work on the weekend to extend her time with the plaintiff. Id. at ¶52.

The complaint alleges that Straks began pursuing the plaintiff using "grooming behavior" to earn his trust, including complimenting him, flirting with him and providing him "special benefits." Id. at ¶56. During their medical

---

[1] Several paragraphs of the second amended complaint provide general information unrelated to the plaintiff's claims against the defendants, including the background of Oshkosh, Kettle Moraine and the PREA; the history of sexual assaults at those prisons; Wisconsin statutes governing DOC institutions; and the administration of the Health Services Unit at Oshkosh. Dkt. No. 40 at ¶¶25-47, 61-81, 89-90. The court will not discuss this irrelevant information.

appointments, Straks allegedly "feign[ed] empathy" while discussing the plaintiff's past and her own "miserable" homelife. Id. at ¶¶57–58. Her behaviors progressed to winking or waving at the plaintiff in front of other prison staff or inmates. Id. at ¶56. The second amended complaint alleges that Straks "would test the boundaries of security and her victim to see if anything would happen." Id. at ¶49. Allegedly, Straks frequently brushed up against the plaintiff, made inappropriate comments, asked personal questions and shared private information. Id. at ¶84. She eventually began engaging the plaintiff "in various levels of sexual activities, including sexual intercourse and oral sex," during medical exams. Id. at ¶51. The plaintiff says no other staff member protected him from Straks's behavior, and he alleges that Straks assaulted at least two other inmates. Id. at ¶49. The plaintiff says he was afraid to come forward about the sexual conduct "based on the manner in which inmates were treated" in previous investigations of similar reports. Id. at ¶51. The plaintiff says he "was unable to file formal complaints for fear of retaliation and possibly being wrongfully convicted and sentenced to additional years of incarceration." Id. at ¶83.

The second amended complaint alleges that Straks targeted the plaintiff because of his drug dependency, which she knew about by accessing his health files through the DOC's medical records database. Id. at ¶53. Straks had access to narcotics through the Health Services Unit's dispensary. Id. at ¶50. Straks allegedly smuggled drugs to the plaintiff as contraband or fed him pills she pilfered from the dispensary. Id. at ¶¶50, 53, 85. She would provide him

with eight to ten Vicodin or OxyContin pills twice a month to encourage the plaintiff's drug use and substance abuse; sometimes she would provide pills from her "personal 'stash'" and when that stash was low, she would provide pills she had taken from the dispensary or pills that were supposed to be given to other inmates. Id. at ¶¶54, 85–86. The plaintiff alleges he "felt trapped and as if he had to 'keep her happy' to keep her from cutting off his access to the pain pills to feed his now-revived addiction." Id. at ¶58. Straks "occasionally intimated that she had been 'called-in' by supervisors to investigate suspicious activity between her and Plaintiff and other inmates." Id. at ¶59. She allegedly told the plaintiff "that if he tried to 'cut things off' she would say he assaulted her, and no one would believe him, and he would be in enough trouble to be incarcerated for the rest of his life." Id. The plaintiff says he was aged 56-57 at the time. Id.

The plaintiff allegedly filed grievances about Straks's sexual assault and misconduct and the DOC's failure to provide him counseling. Id. at ¶87. Unspecified prison staff denied the grievances. Id. When the plaintiff requested counseling from the Health Services Unit for Straks's treatment of him, he received a written response stating that his "allegations were unfounded." Id. The complaint also alleges that the Winnebago County Sheriff's Department interviewed the plaintiff as part of a criminal investigation into Straks's conduct. Id. at ¶88. The complaint does not provide additional information about the investigation or its outcome.

The second amended complaint alleges that the plaintiff suffers anxiety from Straks's actions. Id. at ¶91. He alleges he was prevented from accessing medical care, denied access to a PREA advocate and counseling and "felt extremely unsafe and vulnerable in his incarceration." Id. It further alleges that the plaintiff "suffered economic and non-economic losses of no less than $1,000,000." Id. at ¶92.

4.    *Claims for Relief*

The first claim for relief in the second amended complaint asserts that Straks's actions violated the plaintiff's right to safety and security under the Eighth and Fourteenth Amendments. Dkt. No. 40 at ¶¶94–95. It also asserts that Straks's actions constituted sexual assault and battery under state law. Id. at ¶132. The plaintiff seeks to pursue claims under federal and state laws. Id. at ¶¶131-36.

The second claim for relief references the Eighth Amendment; it asserts that the "Defendants" violated the plaintiff's rights by failing to adequately monitor Straks "while she treated male patients," to stop or discipline Straks for her grooming and inappropriate behavior towards the plaintiff and failed to "enforce existing safeguards designed to protect inmate patients." Id. at ¶104.1–3. It generally asserts that all of the defendants ignored "clear violations of restrictions on contact and behavior permitted between staff and inmate" and "clear signs of 'grooming' and sexualized behavior by staff toward inmates." Id. at ¶104.4–5. The complaint accuses the defendants of fostering "an openly hostile, abusive, demeaning and threatening environment for

11

prisoners" who complained (or attempted to complain) about sexual misconduct. Id. at ¶104.6. The complaint alleges that the plaintiff suffered sexual assaults, denial of access to counseling and fear for his safety "[a]s a result of the behaviors of the defendants herein." Id. at ¶105.

The third claim for relief also references the Eighth Amendment; it asserts that all "Defendants" denied the plaintiff psychological treatment, counseling, mental health treatment "and any and all follow up to address her [sic] depressive issues arising from the assaults and his psychological trauma resulting from the assaults as required by law." Id. at ¶108, 110. It asserts that the plaintiff's "psychological condition has deteriorated and been exacerbated by the numerous failures of defendants here." Id. at ¶111.

The fourth claim for relief references both the Eighth and Fourteenth Amendments; it asserts that Hamblin, John Does #1-9 and Smith engaged in an "indifferent and willfully ignorant supervisory practice" that directly caused the plaintiff's harm. Id. at ¶113. The complaint asserts that "supervisory staff" allowed Straks "to set her own schedule, roam the facility at will, pull inmates from their housing units during off hours, [and] have unchaperoned access to inmates." Id. at ¶114. The complaints asserts that "supervisory staff" failed to "implement adequate inmate monitoring and managing process," allegedly despite repeated sexual violations; provide safeguards preventing inmates from meeting alone with staff; "ensure that female medical providers were chaperoned in physical exams with men;" conduct audits and evaluations of inmate movement for medical appointments, including the reason for and

timing of their visit; and "note and respond to evidence of abuse, and the obvious and clear record of a predatory sex offender in their midst." Id. at ¶115.1–5. The complaint asserts that "[t]he supervisors" disregarded prisoner complaints "and generally allowed Straks to thrive in plain sight." Id. at ¶115.6. It further asserts that "[s]upervisory staff" tolerated or encouraged a threatening, bullying atmosphere against inmates who reported "the sexual behavior of staff" and discouraged proactive measures. Id. at ¶115.7–9. It asserts that "[s]upervisors issued orders that the Plaintiff would not receive the guarantees of federal and state law including mental health counseling and access to his chosen PREA advocate." Id. at ¶115.12. Finally, the complaint says that "supervisory staff" failed to take numerous measures protecting "prisoners" from "subordinate staff." Id. at ¶116.

The fifth claim for relief seeks injunctive relief against the State of Wisconsin, although the second amended complaint does not name the State as a defendant. Id. at ¶119. The complaint asserts that the State has a duty to ensure that DOC institutions comply with federal law, including the PREA. Id. at ¶120. The plaintiff asserts that the current and former director of the DOC "publicly note their strong adherence to a zero-tolerance policy for sexual misconduct inside the prisons." Id. at ¶121. According to the plaintiff, both Oshkosh and Kettle Moraine have reported few complaints of sexual misconduct resulting in findings of fault. Id. at ¶122. The plaintiff contests those numbers and alleges that "DOC's political agenda and fiscal obligations" have influenced the findings. Id. The plaintiff details past "sex abuse 'scandals'"

at Oshkosh and Kettle Moraine and notes that he "is aware of other allegations against other female staff members of sexual misconduct which were never investigated due to severe punitive measures taken against the inmates." Id. at ¶¶123–25. He asserts that "[s]taff are poorly trained" to investigate claims of predatory conduct and routinely threaten inmates into remaining silent about "misconduct especially sexual misconduct." Id. at ¶126. The plaintiff alleges that "without aggressive federal court intervention and management, the situations at [Oshkosh] and [Kettle Moraine] will continue to worsen, no significant change will occur, and no prisoner will be safe." Id. at ¶128.

The plaintiff seeks "the appointment of a court-appointed Special Master to audit, review, interview and investigate the widespread issues alleged in this complaint." Id. at ¶129. The plaintiff proposes numerous responsibilities for the Special Master, including recruiting outside auditors to represent incarcerated persons who allege sexual abuse, implementing new policies to monitor the movement of incarcerated persons and guard their safety and providing training for employees and counseling for affected incarcerated persons. Id.

C.     Analysis

1.     *Defendant Straks*

The court previously concluded that the plaintiff's allegations about Straks and his conditions of confinement state a claim under the Eighth Amendment. Dkt. No. 12 at 5–6 (citing Hardeman v. Curran, 933 F.3d 816, 820 (7th Cir. 2019); Daugherty v. Page, 906 F.3d 606, 611 (7th Cir. 2018)). The allegations in the second amended complaint elaborate on the conditions to

which the plaintiff was exposed and detail the abuse he allegedly suffered almost daily over a years' time. For the same reasons the court previously explained, the court concludes that the second amended complaint states an Eighth Amendment claim against Straks.

The plaintiff also seeks to proceed against Straks on state law claims of sexual assault and battery. He does not identify the state laws under which he seeks to proceed. Wisconsin has laws defining and prohibiting battery and sexual assault. See Wis. Stat. §§940.19 (criminal battery) and 940.225 (sexual assault). But those are *criminal* statutes, which do not create a private right for an individual to bring a civil suit for damages. See Norman v. Campbell, 87 F. App'x 582, 584–85 (7th Cir. 2003) (citing Mallard v. United States Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 306 n.5 (1989)). The Western District of Wisconsin has concluded that nothing in the language of §§940.19 or 940.225 "suggest[s] a private right of action, and the court could find no case law interpreting these statutes as providing a civil cause of action." Equal Emp. Opportunity Comm'n v. Merrill Pine Ridge, LLC, No. 11-CV-589-WMC, 2012 WL 12995649, at *1 (W.D. Wis. Dec. 4, 2012); see Henderson v. Belfuel, No. 03-C-729-C, 2004 WL 602642, at *5 (W.D. Wis. Mar. 16, 2004) (same for plaintiff who was incarcerated and seeking relief for alleged battery under §940.19(2)).

Wisconsin does provide for a civil suit to recover damages for battery. See Wis. Stat. §893.57. But such a suit must be brought "within 3 years after the cause of action accrues." Id. The second amended complaint alleges that Straks sexually assaulted the plaintiff from July 2011 until July 2012. The plaintiff

15

did not file this lawsuit until July 2018, well beyond the three-year limitation period. The court is unable to identify any valid state law battery or sexual assault claims based on the facts recounted in the second amended complaint. The court declines to exercise supplemental jurisdiction over any claims arising under state law. See 28 U.S.C. §1367(a).

To the extent the plaintiff asserts that Straks's actions violated the Wisconsin Department of Correctional administrative code or any prison policies, he has not stated a claim. Section 1983 protects only against violations of the Constitution; it does not protect against violations of departmental regulations and policies or administrative codes. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (citing Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) (departmental regulations and practices); Staples v. Casperson, 6 F. App'x 481, 483 (7th Cir. 2001) (citing Hamlin v. Vaudenberg, 95 F.3d 580, 583 (7th Cir. 1996) (administrative code)).

2. *Other Individuals Mentioned in the Second Amended Complaint*

As the court observed above, although the caption of the second amended complaint names only Straks as a defendant, the "parties to the action" section of the body of the pleading names fourteen other defendants; it appears that the plaintiff seeks to proceed against them for failing to protect the plaintiff from Straks's actions, denying him psychological or medical care and failing to supervise Straks. The Eighth Amendment provides a cause of action against state officials who fail to protect an inmate from harm or fail to provide proper medical treatment. See Farmer v. Brennan, 511 U.S. 825, 832–

16

33 (1994) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"); Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (explaining that the Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care").

To establish these defendants' liability under §1983, however, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017). In other words, the plaintiff must allege how each defendant "personally participated in or caused the unconstitutional actions." Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (citing Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981)); see George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). The plaintiff does not allege that any defendant other than Straks sexually assaulted or harmed him. He instead seeks to hold the other individuals liable for failing to uphold the duties of their positions as supervisors, managers, wardens or directors of the prison or DOC. There is no supervisory liability, collective liability or vicarious liability under 42 U.S.C. §1983. See Iqbal, 556 U.S. at 676; Richards v. Kleinhubert, 263 F. App'x 493, 495 (7th Cir. 2008) (citing Pacelli v. deVito, 972 F.2d 871, 877–78 (7th Cir. 1992)). The defendants cannot be held liable for Straks's actions solely because they held supervisory positions or titles at one of the prisons or at the DOC.

They may be held liable under §1983 only if they knew about Straks's conduct and facilitated, approved or condoned it, or turned "a blind eye for fear of what they might see." <u>Sanville v. McCaughtry</u>, 266 F.3d 724, 740 (7th Cir. 2001).

The second amended complaint generally alleges that the individuals other than Straks failed to protect the plaintiff from the harm Straks allegedly committed or failed to provide him counseling or other services in response to her misconduct. The allegations do not describe specifically what each individual knew and did or failed to do. It alleges that only that all fourteen individuals, or subsets of them, in the same way and for the same reasons violated the plaintiff's rights. It does not allege when these violations occurred (although it implies that they occurred at some time during the year when Straks worked at Oshkosh and allegedly assaulted the plaintiff).

Several courts in this circuit have rejected complaints that contain only general statements alleged against defendants collectively without specifying how any individual defendant violated the plaintiff's rights. See, *e.g.*, <u>Burnett v. Chapman</u>, No. 19-CV-00628-SMY, 2019 WL 4167086, at *3 (S.D. Ill. Sept. 3, 2019); <u>Moore v. Corizon Health Inc.</u>, No. 17-cv-00987-SEB-DML, 2018 WL 1522658, at *5 (S.D. Ind. Mar. 28, 2018); <u>Young Est. of Young v. Peoria Cty., Ill.</u>, No. 1:16-CV-01367-JBM, 2017 WL 3741551, at *4 (C.D. Ill. Aug. 30, 2017); <u>Simpson v. Grams</u>, No. 07-C-493-C, 2007 WL 5581683, at *1 (W.D. Wis. Sept. 11, 2007). Those courts note that "allegations made collectively against a group of defendants fail[] to comply with [Federal Rule of Civil Procedure] 8," which requires that the complaint "include a short, plain statement of the case

against each individual." <u>Burnett</u>, 2019 WL 4167086, at *3. The complaints violated Rule 8 because they alleged only "generically and collectively, that 'Defendants each' performed actions" that violated the plaintiff's constitutional rights. <u>Young</u>, 2017 WL 3741551, at *4; <u>see</u> <u>Moore</u>, 2018 WL 1522658, at *5 (citing <u>Iqbal</u>, 556 U.S. at 678) (dismissing complaint for failure to state a claim because it contained only "collective allegations" and "general assertions" against all defendants); <u>Simpson v. Grams</u>, 2007 WL 5581683, at *1 (dismissing complaint that alleged "generally that 'defendants' collectively did this or that or had a 'policy' that violated his rights"). One court explained that "[a]lthough Plaintiff must only plead a 'short and plain statement,' it is clear that it must be more detailed than this in order to provide proper notice to Defendants." <u>Young</u>, 2017 WL 3741551, at *4.

The plaintiff's second amended complaint violates Rule 8 because it fails to provide enough information to put anyone (other than Straks) on notice of what he or she did that violated the plaintiff's rights. The complaint alleges in detail how Straks personally violated the plaintiff's rights. It then concludes that other people, identified only collectively, violated the plaintiff's rights because they failed to act or implement measures to prevent or address Straks's sexual misconduct. It does not allege that any of these people personally knew about or were aware of Straks's actions. It does not allege that any specific individual had contact with the plaintiff or Straks, received the plaintiff's complaints or grievances about her conduct or even knew who the plaintiff or Straks were. It may be true that these individuals had the authority

to implement additional measures to protect incarcerated persons against sexual assault generally. But if they did not know that *Straks* was sexually assaulting *the plaintiff*, they cannot be held liable for not taking such measures as to the plaintiff. It is not enough to allege generally that they could have done more. The second amended complaint fails to provide a "causal connection" between the defendants and Straks's alleged misconduct. <u>Colbert</u>, 851 F.3d at 657.

Rather than alleging what each individual knew and the actions he or she failed to take, the second amended complaint broadly alleges that the "defendants," "supervisors," "managers" or "supervisory staff" failed to do certain things or take certain actions. The complaint gives the alleged title or position of each individual. But it does not say which of the fourteen individuals were considered Straks's "supervisor," "manager" or something else. Nor does it explain how (or whether) each personally was responsible for monitoring Straks's conduct and how each failed to do so. Lumping the individuals into broad categories and concluding that all of them violated the plaintiff's rights in the same way for the same reasons does not explain how any one of them is *personally* liable for Straks's actions. <u>See</u> <u>Simpson</u>, 2007 WL 5581683, at *1 (concluding that complaint violated Rule 8 because it failed to "identify precisely which respondent acted or failed to act in ways that allegedly violated [the plaintiff's] constitutional rights").

Not every prison staff member has the same authority or responsibility for the operation of the prisons. For example, the second amended complaint

does not explain why the warden of Oshkosh should be held liable in the same way, and for the same reasons, as the DOC's Chief Medical Officer or Director of Security. Nor does the complaint explain why defendants who work at Kettle Moraine should be held responsible for Straks's actions at Oshkosh—the only prison where she allegedly assaulted the plaintiff. It fails to explain how or why the Kettle Moraine (or DOC) defendants would even be aware of Straks or her actions. It is unlikely that all fourteen individuals were responsible for monitoring Straks's behavior, knew she was abusing the plaintiff and failed to take the same action to stop or address her abuse. See Simpson, 2007 WL 5581683, at *1 (rejecting plaintiff's claims that all defendants improperly placed the plaintiff with a sick cellmate because "[i]t is extremely unlikely that twelve separate individuals, including respondents petitioner has identified as health services employees, a doctor, and a 'privacy officer' would be involved personally in making cell assignment decisions"). The complaint fails to allege that *any* of these individuals knew about Straks or her alleged misconduct and fails to explain why *all of them* should be identically held responsible for her alleged misdeeds.

The only paragraphs in the second amended complaint that name any of these individuals specifically (outside of those identifying each defendant) are paragraph 89 and the caption of the fourth claim for relief. Paragraph 89 alleges that that "Hamblin, John Doe #1, 2, 3, 4, 5, 6, 7, 8, 9, Pollard, Smith and Humphreys have known for years of various different technology security solutions that would aid in the prevention and deterrence of sexual assault in

prisons," but that they failed to implement those measures. Dkt. No. 40 at ¶89. The complaint asserts that one of these "technology security solutions" could have alerted staff when Straks was alone with the plaintiff. Id. This allegation is hardly better than the general allegations in the rest of the pleading. It still fails to explain why each of these thirteen individuals is personally responsible for the same alleged failure to implement "different technology security solutions." It is doubtful all thirteen had the same authority to order or implement security measures at Oshkosh, where the sexual assaults occurred. Defendant Humphreys was the Warden at Kettle Moraine at the time. Id. at ¶20. Why should he be responsible for Oshkosh's alleged failure to implement "security solutions" that could have tracked Straks's daily movement? Even accepting the plaintiff's vague allegations as true, that these individuals could have taken preventative measures to improve the security of the incarcerated persons generally does not mean they were aware of *Straks's* behavior involving *the plaintiff* from July 2011 to July 2012. This allegation does not state a claim under §1983 against any of those thirteen defendants.

The caption for the fourth claim for relief is titled "8th/14th Amendment Violations—42 U.S.C. §1983 Failure to Supervise: Defendants Hamblin, John Does #1-9 and Smith." Id. at pages 30-31. The allegations that follow do not reference any particular individuals; they repeatedly refer only to "supervisors" and "supervisory staff." Id. at ¶¶112-117. Again, collective allegations do not suffice to assert personal involvement. And the final paragraph refers to unconstitutional practices by supervisors "which was promoted, allowed or

facilitated with KMCI," id. at ¶117. Straks allegedly assaulted the plaintiff at Oshkosh, not Kettle Moraine.

The second amended complaint's conclusory statements alleged collectively against all the individuals other than Straks are not sufficient to state a claim against any of them. The court will not allow the plaintiff to proceed against any defendant except Straks.

3.      *Injunctive Relief*

The second amended complaint seeks injunctive relief against the State of Wisconsin, although the complaint does not name the State as a defendant— either in the caption or in the "parties to the action" section. Dkt. No. 40 at 34. The complaint asserts that the plaintiff "is entitled to seek injunctive, declaratory and protective relief in cases brought pursuant to 42 U.S.C.1983 [sic]. Plaintiff may bring such claims against the state without raising concerns of sovereign immunity." Id. at ¶119.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed the Eleventh Amendment to prohibit citizens from suing their own states in federal court. Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 472 (1987); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). There are three exceptions to a state's immunity under the Eleventh Amendment:

1) where the lawsuit asserts claims against state officials in their official capacities for prospective equitable relief; 2) where Congress has abrogated immunity "in unequivocal terms and pursuant to a valid exercise of its own power"; and 3) where the state has waived its immunity and consented to suit in federal court. Darne v. State of Wis., Dep't of Revenue, 137 F.3d 484, 488 (7th Cir. 1998); see also Va. Office for Protection & Advocacy v. Stewart, 563 U.S. 247, 253–54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (Citations omitted)).

The second amended complaint does not explain why the plaintiff's claim for injunctive relief against the State of Wisconsin does not "rais[e] concerns of sovereign immunity." The claim does not fall into any of the three exceptions to sovereign immunity. The complaint does not sue the named individuals in their official capacities; it sues only the State for injunctive relief. Dkt. No. 40 at 34 & ¶¶120–29 (naming only "State of Wisconsin" as a defendant under the claim for injunctive relief). Wisconsin has not waived its Eleventh Amendment immunity for claims brought under §1983, and Congress has not abrogated a state's immunity to suit under §1983 or other civil rights statutes. See Buchanan v. City of Kenosha, 57 F. Supp. 2d 675, 677 (E.D. Wis. 1999) (citing Quern v. Jordan, 440 U.S. 332 (1979)); Weinberger v. State of Wis., 906 F. Supp. 485, 491 (W.D. Wis. 1995) (citing Pennhurst, 465 U.S. at 98, 99, 104), aff'd, 105 F.3d 1182 (7th Cir. 1997); see also Munoz v. Anderson, No. 18-CV-

495-PP, 2018 WL 4345041, at *5 (E.D. Wis. Sept. 11, 2018) (citing Stoner v. Wis. Dept. of Agric., Trade and Consumer Prot., 50 F.3d 481, 483 (7th Cir. 1995)) ("The state of Wisconsin has not waived its sovereign immunity."). The Eleventh Amendment bars the plaintiff's claim for injunctive relief against the State of Wisconsin. He may not sue the State under §1983 for any relief, including injunctive relief.

As a final note, in several places the second amended complaint alleges that unspecified staff harmed other, unidentified incarcerated persons and violated their constitutional rights. The plaintiff lacks standing to assert the rights of any other inmate and may not sue on behalf of anyone but himself. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). The plaintiff may assert claims on behalf of himself only and only for injuries he personally sustained. He may not pursue claims on behalf of other inmates specifically or generally.

## II. Plaintiff's Request for Entry of Default (Dkt. No. 41), Motion for Default Judgment (Dkt. No. 44) and Motion to Strike (Dkt. No. 48)

On May 5, 2021, the plaintiff filed a request for entry of default against defendant Straks and a declaration in support. Dkt. Nos. 41, 42. Both documents contain identical information. Counsel for the plaintiff says that on March 26, 2021, he sent the second amended complaint via email "to all listed parties at their email addresses on file." Dkt. No. 42 at ¶3. Counsel then mailed "a conformed copy" of the second amended complaint "via regular U.S. Mail to Defendant Straks on April 9, 2021." Id. He asserts that "[t]hirty-eight (38) days have now elapsed since Plaintiff filed his amended complaint and Defendant

Straks has failed and refused to file any responsive pleading nor has Defendant Straks filed any other requests or motions, including any motion for extension of time." Id. at ¶4. The plaintiff asked that the clerk of court enter default against Straks. Id. at ¶5. The next day, the clerk docketed an "Entry of Default as to Carol Straks." Docket Entry of May 5, 2021 (entered May 6, 2021).

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The plaintiff's request and declaration show that as of May 5, 2021, Straks had not responded to the second amended complaint. It was under Rule 55(a) that the clerk entered Straks's default on the docket.

Five days later, on May 10, 2021, the plaintiff moved for entry of default judgment against Straks. Dkt. No. 44. The plaintiff did not file new documents in support of the motion; he stated only that he "relie[d] upon the record of this case and the Declaration submitted herein." Id. There was no declaration attached to or filed with the motion for default judgment. The court assumes that the plaintiff was referring to the declaration filed with his request for entry of default. Dkt. No. 42.

The plaintiff's counsel said that on March 26, 2021, he emailed the second amended complaint "to all listed parties at their email addresses on file", and Straks has not yet answered. Dkt. No. 42 at ¶¶3–4. Straks's email address is not on file, however, so she did not receive an electronic copy of the

second amended complaint. Counsel for the plaintiff instead "snail"-mailed the second amended complaint to Straks, but not until April 9, 2021. That means only *twenty-six days* had elapsed between when he mailed the second amended complaint to Straks and when he filed his request for default against her for not responding—not thirty-eight days. Only five more days elapsed before the plaintiff moved for default judgment. It is not appropriate for a court to enter default judgment against a defendant for failure to respond to a pleading only thirty-one days after the plaintiff sent it. The motion for default judgment was premature.

Even if the motion had not been prematurely filed, the defendant is representing herself. She has told the court more than once that she does not have the money to hire a lawyer (or to pay a judgment). The court has been lenient with the defendant as a self-represented litigant, just as it is lenient with self-represented plaintiffs. Further, at the time the plaintiff requested default and filed his motion for default judgment, the court had not yet screened the complaint and determined which claims the plaintiff could pursue against which defendants. The court will deny without prejudice the motion for default judgment.

About two weeks after the plaintiff filed his motion for default judgment, defendant Straks filed a document that stated, "I am responding to letter and claims from Mr. Craig Miller's Attorney Lonnie D. Story request for motion of default judgment." Dkt. No. 46. On June 9, 2021, the plaintiff filed a motion asking the court to strike that document. Dkt. No. 48. He argued that the

"response" was insufficient—he asserted that the defendant failed to assert a defense or present any issues, and asked the court to strike it under Fed. R. Civ. P. 12(f). Id. at 2. Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The defendant's "response" does not contain redundant, immaterial, impertinent or scandalous material. It doesn't contain anything at all. The court has not relied on it in denying the plaintiff's motion for default judgment. It will deny the motion to strike. But the court notes that in the future, if the defendant responds to the plaintiff's filings by simply saying, "Here—now I've responded," without making any factual or legal assertions or arguments, the court is entitled to consider the plaintiff's factual and legal assertions as unopposed.

### III.    Plaintiff's Motion for Screening Order (Dkt. No. 47)

The plaintiff also filed a motion asking the court to screen the second amended complaint. Dkt. No. 47. The plaintiff filed that motion on May 28, 2021—two months after the second amended complaint was docketed. The court understands the plaintiff's frustration with the time it has taken the court to screen the complaint. Unfortunately, the court's docket has been full; the court now has been able to screen the complaint. It will deny the plaintiff's motion as moot.

Now that the court had screened the second amended complaint, it will order the defendant to answer or otherwise respond by the date the court sets below. The court understands that the defendant has no lawyer and has

explained that she has no money to hire a lawyer and no money with which to pay a judgment. That is as may be. But the court advises the defendant that if she does not file with this court an answer to the complaint, responding to the plaintiff's allegations that she sexually assaulted him and plied him with drugs (either admitting them or denying them) by the deadline, the court has the authority to find in the plaintiff's favor and issue a judgment against her.

## IV. Conclusion

The court **DISMISSES** defendants Judy Smith, Robert Humphreys, Gary Hamblin, Tom Pollard, John Does #1 through 9 and Jane Doe #1. Carol Straks remains the sole defendant.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for default judgment. Dkt. No. 44.

The court **DENIES AS MOOT** the plaintiff's motion for a screening order. Dkt. No. 47.

The court **DENIES** the plaintiff's motion to strike the defendant's "response." Dkt. No. 48.

The court **ORDERS** that defendant Carol Straks must file a responsive pleading to the complaint in time for the court to receive it by the end of the day on **March 11, 2022**. If the court does not receive an answer or other response from the defendant by the end of the day on **March 11, 2022**, the plaintiff may renew his motion for default judgment. The defendant's answer, if she files one, must address the substance of the plaintiff's claims against her, explaining whether she admits or denies his allegations about her conduct.

The court **ORDERS** that the parties must not begin discovery unless and until the court enters a scheduling order setting out deadlines for discovery and dispositive motions.

The court **ORDERS** that the defendant must send all correspondence and legal documents to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay processing of the case.

The parties must notify the Clerk of Court if they have a change of address. Failure to do so could result in orders or other information not being timely received, which could affect the parties' legal rights.

Dated in Milwaukee, Wisconsin this 16th day of February, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**