CRAIG LEE MILLER,

        Plaintiff,

   v.                                      Case No. 18-cv-1126-pp

CAROL STRAKS,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 56); DENYING PLAINTIFF'S MOTION TO STRIKE MOTION FOR DEFAULT JUDGMENT (DKT. NO. 66); DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR HEARING ON DAMAGES (DKT. NO. 72); DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 78); AND DENYING PLAINTIFF'S MOTION FOR COURT ORDER TO DEPARTMENT OF CORRECTIONS (DKT. NO. 83)**

      This case has been pending for over four and a half years. The court has held hearings at which the defendant has indicated that she has no money to either hire a lawyer or pay a judgment; at one hearing, she advised the court that she would not be responding to an amended complaint for reasons of her own (although she previously had written the court a letter indicating that she was offended by the plaintiff's allegations). Although she has appeared at all hearings the court has scheduled, she has participated only minimally.

      In the beginning, the plaintiff was representing himself. He filed his complaint on July 20, 2018. Dkt. No. 1. He filed an amended complaint less than three weeks later. Dkt. No. 6. It took the court some time to screen that amended complaint, in part because it mistakenly believed that the plaintiff

1

had not paid the filing fee. Dkt. No. 11. The court issued its screening order on February 7, 2020, requiring the defendant to file a responsive pleading. Dkt. No. 12. In the following two and a half months, the court received no response from the defendant.

On April 28, 2020, the plaintiff filed a proposed second amended complaint, dkt. no. 16, but just over a week later, the court received from the plaintiff a letter clarifying that he had intended only to add a defendant, dkt. no. 17. On June 1, 2020, the court received from the plaintiff a request for entry of default. Dkt. No. 18. The request noted that the defendant had sent in the executed waiver of service some two months earlier but had not answered. Id. The court also received from the plaintiff a motion for default judgment, seeking to preserve "Federal Statutory right to a jury trial" on damages; in the alternative, he asked the court to appoint him counsel. Dkt. No. 19.

The court construed the second amended complaint as a request to add TotalMed Staffing (the defendant's employer at the time of the events described in the complaint) as a defendant and denied that motion because the plaintiff had alleged no facts that would show that TotalMed Staffing was vicariously liable for the defendant's alleged actions. Dkt. No. 20 at 2-3. The court denied the motion for default judgment because it was premature and because it was not clear whether the defendant's failure to respond had been due to confusion over the second amended complaint. Id. at 3. The court declined to appoint counsel for the plaintiff at that time, finding that his filings demonstrated that he could represent himself. Id. at 7-8. Finally, the court ordered that the

2

defendant must answer or otherwise respond to the amended complaint (dkt. no. 6) by August 14, 2020. Id. at 8.

On August 3, 2020, the court received from the defendant a handwritten letter, which she indicated was her response or answer to the amended complaint. Dkt. No. 23. The defendant stated that she was angry and shocked at the plaintiff's allegations and advised the court of her version of the events described in the plaintiff's pleadings. Id. at 1-2. The defendant denied the plaintiff's allegations. Id. The plaintiff again requested entry of default, asserting that the defendant had failed to answer or otherwise respond. Dkt. No. 26. The court denied that request, noting that the defendant *had* responded. Dkt. No. 27.

On September 10, 2020, the court held a telephonic status conference. Dkt. No. 29. Early in the hearing, the plaintiff asked why the Wisconsin Attorney General was not representing the defendant (who had been working at the Wisconsin Department of Corrections at the time of the events alleged in the amended complaint). Id. at 1. The defendant responded that she had not worked for the Wisconsin Department of Corrections; she had worked for "Total Med Staffing," which contracted with the DOC. Id. The defendant told the court that she had not contacted either the DOC or TotalMed Staffing to ask if either would represent her because she thought she needed only to tell the court that she did not want to participate in the case; she stated that she had no money to pay an attorney because she was on disability. Id. The court scheduled another hearing. Id.

3

The court held the second hearing on November 12, 2020. Dkt. No. 33. The court explained at this hearing that the Attorney General was not responsible for bringing TotalMed Staffing into the case; it noted that the plaintiff had filed his case under 42 U.S.C. §1983 and that under that statute, only individuals acting under color of state law could be held liable. Id. The court offered to send the case to mediation, to allow the plaintiff to file an amended complaint stating a theory of liability against TotalMed Staffing or to schedule a trial. Id. After some discussion, the court stated that it would try to recruit an attorney for the plaintiff, for the purpose of determining whether TotalMed Staffing had any obligation to defend or indemnify the plaintiff. Id. at 1-2.

On November 17, 2020, the court issued an order notifying the plaintiff that Attorney Lonnie Story had agreed to represent him. Dkt. No. 34. The plaintiff agreed to Attorney Story's representation. Dkt. No. 35. Although Attorney Story originally had been appointed to research whether TotalMed Staffing had any obligation to defend or indemnify the plaintiff, Attorney Story eventually agreed to represent the plaintiff on a *pro bono* basis for all purposes. Dkt. No. 39 at 1. On March 26, 2021, Attorney Story filed an amended complaint. Dkt. No. 40. On May 5, 2021, he requested entry of default. Dkt. No. 41. The clerk of court entered default the same day.

On May 10, 2021, Attorney Story filed a motion for default judgment. Dkt. No. 44. The one-paragraph motion did not identify the damages the plaintiff was seeking or an amount. Attorney Story also filed a blank proposed

order of default judgment; he had not filled in the blanks next to "compensatory damages," "punitive damages" or "other relief." Dkt. No. 45. The defendant responded by filing a single page that stated, "I am responding to letter and claims from Mr. Craig Miller's Attorney Lonnie D. Story request for motion of default judgment." Dkt. No. 46. Attorney Story then filed a motion asking the court to screen the amended complaint, dkt. no. 47, and a motion to strike the defendant's "response" to his motion for default judgment, dkt. no. 48. On February 16, 2022, the court issued an order screening the second amended complaint, dismissing all defendants but Straks, denying without prejudice the motion for default judgment, denying the plaintiff's motion to strike and ordering the defendant to answer or respond to the second amended complaint. Dkt. No. 50. The court denied the motion for default judgment because, again, it had been prematurely filed and because it was filed before the court had screened the second amended complaint. Id. at 27. The court declined to strike the defendant's response, but advised her that simply saying, "Here's my response" was not sufficient as a response to future pleadings. Id. at 28. The court ordered the defendant to respond to the second amended complaint by March 11, 2022. Id. at 29.

The court received no answer or response from the defendant. On March 14, 2022, the defendant again requested entry of default. Dkt. No. 51. On June 22, 2022, the court held a telephonic hearing to determine whether the defendant had chosen not to answer or had been unaware that she was required to do so. Dkt. No. 61. The defendant told the court that she knew the

plaintiff had filed a second amended complaint, but that for her own reasons, she'd decided not to respond to it. Id. at 1. The court explained that the plaintiff could file a motion for default judgment; it emphasized that the motion must include evidentiary support for any requested damages (medical bills, etc.). Id. The court also emphasized that if the plaintiff was seeking damages other than compensatory damages, he should include Seventh Circuit caselaw supporting the court's authority to impose such damages on default judgment. Id.

On June 27, 2022, Attorney Story filed another motion for default judgment. Dkt. No. 56. The motion consisted of a single paragraph, requesting default judgment and relying on "the Declaration submitted herein." Id. The attached declaration from Attorney Story asked for an award of $200,000 for compensatory damages and $250,000 for punitive damages, citing Quickle v. Baldwin, No. 18-cv-1332 (C.D. Ill.), which Story averred had been affirmed by the Seventh Circuit. Id. at 3, ¶12. There was no evidence attached to the motion and no explanation of how the $200,000 in compensatory damages had been calculated.

On June 29, 2022, the court received a letter from the plaintiff stating that five days earlier he had informed Attorney Story that Story no longer was "on [the plaintiff's] case not to file anything in [the plaintiff's] case." Dkt. No. 60. The plaintiff opined that Attorney Story believed the case was Story's and that Attorney Story could do as he pleased; the plaintiff vehemently asserted that he did not trust Attorney Story. Id. The plaintiff asked to be heard before

the court decided the default judgment motion, asking the court to strike the motion, not to "force" Story on the plaintiff and to allow the plaintiff to "get an attorney who will do the research into [his] medical issues and family impact and bring a fair motion before the Court." Id. The plaintiff emphasized that he wanted Attorney Story off the case. Id.

When the court did not respond right away to this letter, the plaintiff filed another letter, reiterating that he wanted to find a lawyer who he believed would help him and asking the court to have him moved into federal custody. Dkt. No. 62. A month later, Attorney Story filed a notice of attorney's charging lien, dkt. no. 63, and a motion to withdraw, dkt. no. 64. The same day the court received those motions from Attorney Story, it received from the plaintiff a motion to strike Attorney Story's motion for default judgment. Dkt. No. 66. Two days later, the court received from the plaintiff a letter indicating that he had talked to Attorney Story and that the two could not move forward together; he asked for time to get a new attorney. Dkt. No. 67. The court also received from the plaintiff a "response" to Attorney Story's notice of an attorney's charging lien; the plaintiff asked "to go to a arbitration," complaining about Attorney Story's representation of him. Dkt. No. 68.

Ten days after the court received the plaintiff's response to the notice of charging lien, and before the court had ruled on the eight motions and letters that it had received in the prior two months, Attorney William F. Sulton filed a notice of appearance on behalf of the plaintiff. Dkt. No. 69. The court thus granted Attorney Story's motion to withdraw. Dkt. No. 71. Within three

7

months, Attorney Sulton filed a motion asking the court to schedule a hearing on damages. Dkt. No. 72.

The court held a status conference on January 17, 2023. Dkt. No. 76. At that hearing, the court explained that the motion for default judgment Attorney Story had filed did not identify a damages amount sought[1] or how damages had been calculated; the court stated that without this information, it could not decide whether to hold a hearing. Id. at 1. It proposed that Attorney Sulton file an amended motion for default judgment, explaining the amount of damages the plaintiff was seeking and how that amount had been calculated. Id. Attorney Sulton stated that he would file an amended motion for default judgment (one that included damages calculations), but told the court that he needed to research whether the third-party company (Total Med) that had employed the defendant was insured. Id. He asked for sixty days to conduct research and, if necessary, serve subpoenas. Id. Given that, the court deferred ruling on the motion for default judgment filed by Attorney Story, the motion to strike filed by the plaintiff and the motion for a damages hearing. Id.

On February 12, 2023, Attorney Sulton filed a motion to compel. Dkt. No. 78. The motion was accompanied by his declaration. Dkt. No. 77. The motion explained that on January 19, 2023, TotalMed had been served with a subpoena demanding that documents be produced by January 31, 2023. Id. at

---

[1] The court's assertion that Attorney Story's motion did not ask for a particular damages amount was incorrect; Attorney Story had asked for $200,000 in compensatory damages and $250,000 in punitive damages but had provided no documentation supporting the compensatory damages request and no Seventh Circuit case law supporting the punitive damages request.

8

2. It indicated that on January 31, TotalMed's representatives "confirmed that they had been served with the subpoena and promised to 'work[] with IT to see if there is anything housed in our previous system[.]'" Id. The motion stated, however, that as of the time of the motion (twelve days later), TotalMed's representatives had not returned follow-up phone calls or emails about the requested information. Id. Because TotalMed was the only possible source of funds to satisfy a judgment, and because the motion stated that it was "apparent" that TotalMed would not comply with the subpoena, the motion asked the court to issue an order compelling compliance, or to issue an order to show cause and schedule a hearing. Id.

The attached declaration from Attorney Sulton averred that, due to its record retention policy, the DOC did not have copies of its contract with TotalMed or information about TotalMed's insurance. Dkt. No. 77 at ¶5. It indicated that on January 31, TotalMed's director of human resources had emailed Sulton, indicating that the company did not "have any documentation in our current systems that we can provide," and that she was working with IT to determine if there was anything "housed on our previous system." Id. at ¶9. Sulton averred that since January 31, 2023, he'd made several attempts to contact the HR director by telephone and email, but that he had received no responses; he stated that it was "apparent" that the HR director was ignoring him. Id. at ¶10.

On February 21, 2023, Attorney Sulton filed a status report. Dkt. No. 79. He explained that TotalMed had been able to provide him with "some insurance

brokerage information." Id. at 3. He indicated that he would need additional time to complete discovery and file the necessary default judgment paperwork. Id. Two days later, however, the court received from the *plaintiff* a letter stating that Attorney Sulton had taken money from him and his family and had lied to him. Dkt. No. 80. The plaintiff stated that he did not have any trust or confidence in Attorney Sulton and asked the court to "remove him." Id. The following day, Attorney Sulton notified the court that he did not oppose the plaintiff's request and explained that the relationship between the two had broken down some time ago. Dkt. No. 81. The court issued a brief order noting that because the court didn't appoint Attorney Sulton, the plaintiff was not required to file a motion to remove him; the court accepted the plaintiff's notice that Attorney Sulton was terminated and observed that this meant that the plaintiff now was representing himself once again. Dkt. No. 82.

Finally, on March 6, 2023, the court received from the plaintiff a motion asking the court to order the Department of Corrections "to provide a copy of D.O.C. Contract Number C2909D." Dkt. No. 83. The plaintiff said that this document should provide "a theory of liability against [the defendant's] former employer (TotalMed Staffing) . . . ." Id. The plaintiff said, "I hope and pray the Court will see fit to help me get an attorney to bring this case to a close," but declined to "go in to how Attorney Sulton did [the plaintiff] and [his] family." Id. The plaintiff said he just needed someone to prepare his motion for damages. Id. The plaintiff attached to the motion a letter dated August 27, 2012 from Edward Bradley in the Purchasing Services Section of the Department of

Corrections. Dkt. No. 83-1. The letter was addressed to "Staff One" in West Allis, Wisconsin and referenced "Renewal Option for Nurse Staffing." Id. It described DOC contract number C2909D as having an original term of September 1, 2011 through September 1, 2012 and referenced a single renewal term of September 1, 2012 through September 1, 2013. Id. It asked for Staff One's "intentions regarding renewal of the contract." Id. It asked Staff One to indicate whether it wished to renew the contract or not and to return it to Bradley. Id.

     To say that this case has become a tangled mess would be an understatement. The plaintiff has gone through two attorneys—one appointed by the court, one whom he hired. As best the court can tell, Attorney Sulton was on a path to doing what the plaintiff had indicated he wanted: finding out whether the company that had employed Straks was insured. Once Attorney Sulton obtained that information, he was going to file an amended motion for default judgment including a request for damages. But the plaintiff has fired Attorney Sulton, and now appears to anticipate that the court will find another lawyer for him. The plaintiff is mistaken. The court understands that the plaintiff has indicated since the beginning that he has suffered physically and mentally from the defendant's alleged actions. He has told the court all along that he has medical records to prove his damages. The court realizes that Attorney Story did not present those records, or any evidence of damages. But the plaintiff then had the opportunity to select and hire his own lawyer, rather than relying on the one the court was able to recruit for him. He does not like

the way that lawyer was proceeding, either, although he has not explained why. The court does not have the resources to appoint multiple lawyers for someone, particularly for someone who was able to come up with funds to hire his own lawyer. The court will not appoint another lawyer to represent the plaintiff.

The court will deny the plaintiff's motion to strike the default judgment motion Attorney Story filed, and will grant that motion as to liability. The plaintiff is entitled to a default judgment; the defendant has told the court that she chose not to answer the second amended complaint. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)). The defendant is liable to the plaintiff on his claims.

The motion for default judgment filed by Attorney Story sought $200,000 in compensatory damages and $250,000 in punitive damages, but provided no evidence supporting those requests. Presumably the reason the plaintiff wanted the court to strike the motion is because he believes he is entitled to more than $200,000 in compensatory damages (and perhaps more in punitive damages) and he wants the chance to prove the greater amount of damages to the court. The plaintiff has an *obligation* to support his claim for damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to

ascertain the amount of damages with reasonable certainty." In re Catt, 368 F.3d 789, 793 (7th Cir. 2004) (quoting Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 19999)). The court will give the plaintiff the opportunity to meet that obligation, but it will not schedule a hearing on damages at this time; it will give the plaintiff an opportunity to file a written request for damages and any supporting documentation showing how he arrived at the dollar amount he seeks. Once the court has reviewed that request and the supporting documents, it will determine whether a hearing is necessary.

The other issue that has haunted this case is the question of whether there is anyone who could pay any damages that the plaintiff can prove up. That is why Attorney Sulton was seeking information from TotalMed about whether they had insured the defendant. That is why Attorney Sulton had served TotalMed with a subpoena. It seems that TotalMed provided Attorney Sulton with "some insurance brokerage information," and that he was planning to conduct further discovery on that issue when the plaintiff fired him. The plaintiff has a right to fire a lawyer that he has hired, but there are consequences to that decision. The court will not appoint the plaintiff another lawyer to continue the work that his retained lawyer was doing and could have continued doing. The court will deny without prejudice Attorney Sulton's motion to compel; as of his February 21, 2023 status report, it appears that he was satisfied that he'd obtained what records TotalMed had and that he was prepared to pursue other avenues.

13

Finally, the court will deny the plaintiff's motion to compel the Department of Corrections to provide him with a copy of contract number C2909D. The DOC is not a party to this case. The plaintiff no longer needs to prove liability; the court has granted default judgment, which means that the defendant is deemed liable for the allegations in the second amended complaint. All that remains is for the plaintiff to file a motion for damages, explaining how much he is seeking and providing the court with evidence supporting the amount he requests.

The court will give the plaintiff some time to prepare his motion, but it cautions him that it will not hold the case open indefinitely. The court understands that the plaintiff is frustrated; he feels he has been severely harmed (and he has presented the court with information over the years that indicates that his claims were taken seriously by others), yet because of the defendant's financial situation and the fact that she was a contract employee, it seems that, as the plaintiff once said, the Department of Corrections can simply "walk away" from what the defendant did. But the defendant was not employed by the Department of Corrections, and because the plaintiff fired Attorney Sulton, the court has no information about whether the entity that *did* employ the defendant is a source of funds for any damages caused by her actions. The plaintiff has had two lawyers to assist him and has dismissed them both. The case must come to completion at some point.

The court **GRANTS** the plaintiff's motion for default judgment as to liability. Dkt. No. 56.

The court **DENIES** the plaintiff's motion to strike the motion for default judgment. Dkt. No. 66.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for a hearing on damages. Dkt. No. 72.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to compel. Dkt. No. 78.

The court **DENIES** the plaintiff's motion to order the DOC to produce documents. Dkt. No. 83.

The court **ORDERS** that if the plaintiff wishes to be awarded damages, he must file a written motion for damages and any supporting documentation in time for the court to *receive* them by the end of the day on **May 19, 2023**. If the plaintiff needs more time to prepare his motion, he must request that time *before* May 19, 2023 and tell the court how much additional time he needs. If the plaintiff can find another lawyer before May 19, 2023, that lawyer may ask the court for more time to file the motion.

If the plaintiff files a motion for damages, the court will give the defendant an opportunity to respond to that motion.

Dated in Milwaukee, Wisconsin this 15th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**