UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CRAIG LEE MILLER,

Plaintiff,

v. Case No. 18-cv-1126-pp

CAROL STRAKS,

Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR HEARING (DKT. NO. 89), DENYING AS UNNECESSARY PLAINTIFF'S MOTION TO CLARIFY (DKT. NO. 96), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 99) AND SCHEDULING HEARING**

---

Before the court are plaintiff Craig Miller's motion for a hearing to determine damages to which he is entitled under the default judgment the court entered against defendant Carol Straks, dkt. no. 89, his motion to clarify, dkt. no. 96 and his motion to appoint counsel, dkt. no. 99. The court will grant the plaintiff's motion for a hearing, deny as unnecessary his motion to clarify and deny his motion to appoint counsel. At the end of this order, the court has scheduled a date and time for a telephone hearing on the issue of damages.

## I. Procedural Background

On March 15, 2023, the court granted the plaintiff's motion for default judgment against defendant Straks, who has declined to defend this lawsuit. Dkt. No. 85. In that order, the court traced the history of the case, which included court orders denying the plaintiff's request to add Straks's employer, TotalMed Staffing, as a defendant, id. at 2 (citing Dkt. No. 20); explaining why

the Wisconsin Department of Corrections (DOC) was not representing Straks and would not be a participating party, id. at 3–4 (citing Dkt. Nos. 29, 33); and denying the plaintiff's first motion for default judgment as premature and deficient, id. at 4–5 (citing Dkt. No. 50). During a June 22, 2022 telephone hearing, Straks acknowledged receiving the plaintiff's second amended complaint but said she would not respond to it. Id. at 5–6 (citing Dkt. No. 61). The court explained that the plaintiff could renew his motion for default judgment, but that "motion must include evidentiary support for any requested damages (medical bills, etc.)" and appropriate caselaw "if the plaintiff was seeking damages other than compensatory damages." Id. at 6 (citing Dkt. No. 61 at 1).

The March 15, 2023 order recounted that with the assistance of counsel, the plaintiff had filed a second motion for default judgment. Id. (citing Dkt. No. 56). The plaintiff and his attorney then had had a falling out, and new counsel (Attorney William F. Sulton) had appeared on the plaintiff's behalf. Id. at 6–7 (citing Dkt. Nos. 60, 62–64, 66–69). Attorney Sulton had asked for a hearing on damages. Dkt. No. 72. At a January 17, 2023 status conference, the court explained to Attorney Sulton, the plaintiff and Straks that the plaintiff's pending motion for default judgment "provided no documentation supporting the compensatory damages request and no Seventh Circuit case law supporting the punitive damages request"—information the court had ordered the plaintiff to provide. Id. at 7–8 & n.1 (citing Dkt. No. 76). The court allowed Attorney Sulton to file an amended motion for default judgment that explained "the amount of

damages the plaintiff was seeking and how that amount had been calculated." Id. at 8 (citing Dkt. No. 76 at 1).

Attorney Sulton then filed a motion asking the court to compel the production of documents from TotalMed Staffing, the company that had employed (and terminated) Straks. Id. at 8–9 (citing Dkt. No. 78). Attorney Sulton told the court that he had been able to obtain some documents from TotalMed, but that he needed "additional time to complete discovery and file the necessary default judgment paperwork." Id. at 9–10 (citing Dkt. No. 79). But before the court had ruled on Attorney Sulton's request, the court received from the plaintiff a letter stating that he no longer wanted Attorney Sulton to represent him. Id. at 10 (citing Dkt. No. 80). The court allowed Attorney Sulton to withdraw and observed that the plaintiff "was representing himself once again." Id. (citing Dkt. No. 82). The court emphasized that "[t]he plaintiff has gone through two attorneys—one appointed by the court, one whom he hired," and said that it would not attempt to find him another. Id. at 10–11.

The court denied the plaintiff's motion to strike the default judgment motion filed by his first attorney and granted that motion as to liability. Id. at 12. The court told the plaintiff that although this meant that Straks "[was] liable to the plaintiff on his claims," the plaintiff "ha[d] an obligation to support his claim for damages." Id. at 12. The court explained that it would not deem to be true the plaintiff's request for damages in his second amended complaint. Id. at 12–13 (citing In re Catt, 368 F.3d 789, 793 (7th Cir. 2004) (quoting Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). The court

ordered the plaintiff "to file a written request for damages and any supporting documentation showing how he arrived at the dollar amount he seeks" by May 19, 2023. Id. at 13, 15. The court told the plaintiff that after he filed that request, the court would review it to determine whether a hearing was necessary to determine the damages to which the plaintiff is entitled. Id. at 13.

Since the March 15, 2023 order, the court has received several documents from the plaintiff. On March 30, 2023, the court received from the plaintiff a letter discussing the plaintiff's strained relationship with Attorney Sulton (whom the court had allowed to withdraw a month earlier) and asking "to renew" Sulton's motion to compel (which had asked the court to issue an order directing TotalMed Staffing to comply with a subpoena *duces tecum*, Dkt. No. 78, filed February 12, 2023). Dkt. No. 86. The court denied that request, reiterating that "TotalMed is not a party in this action" and telling the plaintiff that he could "file a new motion to compel, explaining what documents he believe[d] [TotalMed] ha[d], why they [were] necessary for his motion for damages and why he [was] unable to obtain them on his own without the court's intervention." Dkt. No. 87.

On April 24, 2023, the court received from the plaintiff a letter, to which he attached "medical records in support of [his] damages request that will be Forth Comeing [*sic*]." Dkt. No. 88. The letter said that the plaintiff also had included "exhibits on insurance requirement of the State of Wisconsin that it be required be maintained by contractors," which he says is relevant "because of the special relationship [he] had with the State of Wisconsin at the time [he]

was violated." Id. at 1. The plaintiff expressed concerns about the prison where he was incarcerated at the time (in particular, the limited amount of time he had outside his cell and the limited access to telephones) and renewed his request for an attorney. Id. at 1–2. He asked the court to take into consideration his limited research time and resources and the fact that he is in a wheelchair. Id. The plaintiff's attached exhibits include a section of the purported insurance policy, dkt. no. 88-1 at 1, 3, and the plaintiff's psychiatric records while he was incarcerated between May 2018 and February 2021, id. at 5–22.

On May 8, 2023, the court received the plaintiff's motion for a hearing on his request for damages. Dkt. No. 89. The plaintiff begins by again opining that he will need an attorney "if this case must continue" and stating that he did not receive requested records from the DOC. Id. at 1. He says that he "tried to reach out to the Bar" for assistance in preparing a report on damages but was unsuccessful. Id. at 1–2. He requests a hearing so that he can "share with the court the feelings of guilt, sorrow, loneliness" and the personal issues he says he has encountered "as a result of [his] involvement with the defendant Ms. Straks." Id. He discusses the death of his wife, whom he says he did not tell about Straks until his wife was on her death bed. Id. at 2. He says that his wife then made a false report to the plaintiff's parole or probation agent because she felt betrayed. Id. The plaintiff filed for divorce, which was executed in 2020 or 2021. Id. The plaintiff says that he nonetheless remained by his wife until she died in 2022. Id. at 2–3. He explains that he was arrested soon after "for going

to see a[n] old friend Mr. 'Addiction.'" Id. at 3. The plaintiff asks the court to help him "reach a fair settlement with the State" and says that he would be open to mediation. Id. He says that he does not have any information to support his request "for a sum certain" and that he has only his "feeling and experience's [*sic*]." Id. The plaintiff says that he is "satisfied with the information [he has] presented to the Court for default judgment consideration" and that he will "wait to hear from the Court and go from there." Id.

The plaintiff did not wait to hear from the court. Only four days later, on May 12, 2023, the court received another letter. Dkt. No. 90. In this letter, the plaintiff requests damages of $50 million in compensatory damages, $5 million for "[f]uture treatment for mental health and addiction" and $100 million in punitive damages. Id. at 1. The plaintiff provides no evidentiary support for these amounts and no explanation of how he reached them. Instead, he asks "the Court to move with a since of ergency [*sic*]" because his house was in foreclosure and his wife's estate was in default. Id. at 1–2. The plaintiff says he hoped to pay off his remaining mortgage and sell his house, and he asks "is there any thing [*sic*] this Court can do to help" him pay the bank. Id. at 2. Alternatively, he asks "for this case to be settled in time for [him] to save [his] home." Id. He says that he is aware that the foreclosure of his house "do[es] not have any thing [*sic*] to do with [his] case." Id. The plaintiff attached a January 2023 email about the house from his estate attorney to Attorney Sulton (the second attorney to represent him). Dkt. No. 90-1.

On August 18, 2023, the court received another letter from the plaintiff. Dkt. No. 91. In this letter, the plaintiff says that "the bank has sold [his] home," and he provides a notice of a status conference in the foreclosure case in state court. Id. at 1; Dkt. No. 91-2. The plaintiff asserts that "this was only able to be done because attorney William Sulton has never worked in [his] best intrest [*sic*]." Dkt. No. 91 at 1. He asks the court "to consider all of this" and asks why the court is "allowing the STATE [*sic*] to do all of these things to [him]." Id. at 1–2.

On October 12, 2023, the court received yet another letter from the plaintiff. Dkt. No. 93. The plaintiff asks "the court to help [him] understand" why the court told him that "the defendant is deemed liable for the allegations in the second amended complaint." Id. at 1. He reiterates that "at the time of violations in this case [he] was in a special relationship with the State of Wisconsin," and he opines that he does not "need to tell the Court what that means." Id. He asks the court to consider "the struggles [he has] had as a result of [his] experiences," including his addiction issues that he says were "exacerbated by these experiences." Id. at 1–2. The plaintiff says that he cannot "go to the administration or the Court for any consideration because [he has] no documentation of [his] suffering and its [*sic*] not fair." Id. at 2.

On March 6, 2024, the court received notice that the plaintiff no longer was incarcerated; the plaintiff provided his new address on 19th Street in Milwaukee. Dkt. No. 94.

On September 9, 2024, the court received another letter from the plaintiff in which he stated that his May 12, 2023 letter (Dkt. No. 90) was his "default motion as ordered by the Court." Dkt. No. 95 at 1. He asks for a status update and says he "can not [*sic*] begin to put [his] life on track until this case is behind [him]." Id. at 1–2. He asks the court to "enter judgment" or "let [him] know what's going on." Id. at 2.

On June 18, 2025, the court received from the plaintiff a document titled "Motion to ClairiFie Recent Documents' sent to the Court in This Case." Dkt. No. 96. The caption of this document bears Case No. 18-cv-1126-pp and lists the defendant as Straks. Id. at 1. The motion states that the plaintiff "does not wish to challeg [*sic*] or relitigate any other case, iF it wasn't appropriate to send the Racine court record's as exhibits I asking this court to ignore them or place them in Case No. 22-cv-595-PP File, I do not wish to reopen that case or challeng [sic] any conviction or to distured [*sic*] this case in any way." Id. (On May 18, 2022, the plaintiff filed a civil rights suit against Racine County, Oconto County, two lawyers and probation personnel. Miller v. Racine County, *et al.*, Case No. 22-cv-595 (E.D. Wis.) at Dkt. No. 1. On October 27, 2022, this court dismissed the case at screening for failure to state a claim, id. at dkt. no. 7, and on December 12, 2023, denied the plaintiff's motions to reconsider, id. at dkt. no. 17.)

The same day—June 18, 2025—the court received from the plaintiff another document, titled "Request for Status Update." Dkt. No. 97. Again, the caption of this document bears Case No. 18-cv-1126-pp and lists the defendant

as Straks. Id. at 1. But the body of the document asks the court to take judicial notice of Case No. 22-cv-595-pp; the plaintiff says that at page 5 of a December 12, 2023 document in that case (presumably the court's order denying the plaintiff's motions to reconsider the court's dismissal of the case), "The prosecutor lied to the Judge when she said the state was relying on OWI conviction of Racine, iF it weren't For this misrepresentation to the Court the case would have ended." Id. He says that he just wants to keep the court aware of what is going on. Id.

On June 27, 2025, the court received a document titled "Plaintiff Would like to Renew Plaintiff's Motion for Hearing on Damages." Dkt. No. 98. He asks that if the court sets a hearing, the hearing be "in person," and he says that "iF the Court believes that an attorney could help to Facilitate the process," the court "do what ever it can to make that happen." Id. The plaintiff also says that he wants to apologize to the court for all the problems he's caused. Id.

Finally, on June 30, 2025, the court received from the plaintiff a document titled "Pursuant to 1915(e)(1) plaintiff is Asking the Court to Appoint Counsel." Dkt. No. 99. This document contains a single sentence, which says, "This case has gotton [sic] very complicated and dangerous I don't Feel saFe I don't know how to help my self please help me." Id.

## II.    Motion for a Hearing on Damages (Dkt. No. 89)

The court understands the plaintiff's frustration about the delays and uncertainty about his case. The plaintiff struggles with physical and mental health issues, which have made litigation more difficult for him. Although

Straks has not defended against the allegations, it is not clear whether there is a source of redress—Straks claims to have no money, she was terminated by her employer for conduct apparently related to the plaintiff's claims and the State is not a party to the case. And it now has been over two years since the court granted the plaintiff's motion for default judgment and found that defendant Straks was liable on the plaintiff's claims that between July 7, 2011 and July 25, 2012, Straks (at the time, a contract nurse working at Oshkosh Correctional Institution) sexually assaulted him, recruited other incarcerated persons to victimize him and gave him drugs that caused him to become addicted. The court regrets that it has taken this long to address his motion for a hearing on damages and his damages request.

The court now has reviewed the plaintiff's motions, his request for damages and his letters detailing events relevant to this case (and several that are not relevant). The court has decided to hold a hearing on the plaintiff's request for damages, but it is important for the plaintiff to understand the purpose and limits of that hearing.

The court explained in the March 15, 2023 order granting default judgment as to liability that it accepts as true the allegations in the second amended complaint about Straks's liability because she has decided not to respond to or contest those allegations. Dkt. No. 85 at 12 (citing e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007); and United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)). That is what "default judgment" means. See Federal Rule of Civil Procedure 55(a). But although "'a default

judgment establishes liability, it does not answer whether any particular remedy is appropriate.'" Andersen v. Riverwalk Holdings Ltd, Case No. 15-cv-621, 2015 WL 7862923, at *2 (E.D. Wis. Dec. 3, 2015) (quoting Campbell v. ECW, Inc., Case No. 13-C-1066, 2014 WL 3895534, at *1 (E.D. Wis. Aug. 7, 2014); and citing e360 Insight, 500 F.3d at 602 (internal quotation omitted)). Instead, as the court explained in the March 15, 2023 order, the plaintiff must support his claim for damages with documentation showing the amount to which he believes he is entitled. Dkt. No. 85 at 12–13; see Fed. R. Civ. P. 55(b)(2). The plaintiff has told the court that he has no information to support a request for a sum certain, so he is required "to introduce evidence on the damages caused" by Straks's abuse "as well as on any grounds [he] might have for also obtaining an award of punitive damages." Catt, 368 F.3d at 793 (citing Fed. R. Civ. P. 55(b)(2); Lowe v. McGraw–Hill Cos., Inc., 361 F.3d 335, 339–40 (7th Cir. 2004); and Alcantara, 183 F.3d at 154–55). The court must "conduct an inquiry" into the plaintiff's submitted evidence and cannot award damages until it has "ascertain[ed] the amount of damages with reasonable certainty." Id. (quotation omitted).

A. Compensatory Damages

Compensatory damages "are designed to provide '*compensation* for the injury caused to plaintiff by defendant's breach of duty.'" Memphis Cmty. School Dist. v. Stachura, 477 U.S. 299, 306 (1986) (quoting Cary v. Piphus, 435 U.S. 247, 255 (1978)). "'[T]he basic purpose' of § 1983 damages is 'to *compensate persons for injuries* that are caused by the deprivation of constitutional rights.'" Id. (quoting Cary, 435 U.S. at 254). This may include

"out-of-pocket loss and other monetary harms," as well as injuries like "'personal humiliation[] and mental anguish and suffering.'" Id. (quoting Gertz v. Robert Welch, Inc., 418 U.S. 33, 350 (1974)). But "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in [§1983] cases." Id. at 310.

The court detailed the plaintiff's specific allegations against Straks in the its February 16, 2022 screening the second amended complaint. Dkt. No. 50. The plaintiff alleged that he had daily contact with Straks from July 2011 through July 2012. Dkt. No. 40 at ¶83. In her role as a nurse, Straks often was alone with the plaintiff while she applied analgesic ointment to treat the plaintiff's back pain. Id. at ¶¶51, 57. Straks allegedly pursued the plaintiff because of his known history of drug dependency and would provide him Vicodin and OxyContin to encourage his drug use. Id. at ¶¶53–54. During medical appointments, Straks allegedly engaged in sexual activity with the plaintiff, including kissing and fondling him and engaging in sexual intercourse and oral sex in exam rooms. Id. at ¶55. She then began having inappropriate contact and communications with the plaintiff in front of other staff. Id. at ¶¶49, 56, 84. The plaintiff alleged that he "felt trapped and as if he had to 'keep her happy' to keep her from cutting off his access to the pain pills to feed his now-revived addiction." Id. at ¶58. Straks allegedly told the plaintiff that "if he tried to 'cut things off' she would say he assaulted her, and no one would believe him, and he would be in enough trouble to be incarcerated for the rest of his life." Id.

at ¶59. The plaintiff sought a finding of "harm and damages in an amount no less than $1,000,000." Id. at p.41.

In his original complaint, the plaintiff did not specify the amount of compensatory or punitive damages he was requesting. Dkt. No. 1 at 4. Nor did he request a specific amount of damages in his first amended complaint. Dkt. No. 6 at 4. In his March 26, 2021 second amended complaint (filed by his first appointed counsel, Lonnie Story), the plaintiff requested $1 million in compensatory damages and punitive damages of $100,000 as to each defendant. Dkt. No. 40 at 41. In an untitled document the court received on May 12, 2023, the plaintiff stated that he was seeking $50 million in compensatory damages. Dkt. No. 90 at 1. The plaintiff did not attach to any of these documents medical bills or invoices, receipts for out-of-pocket expenses, invoices for counseling or therapy. The medical records he attached to his April 24, 2023 letter discuss the treatment he received in the previous few years for his schizophrenia and other conditions, but none of those records reflect the cost of the treatment. And not all those records relate to the events with Straks. Some of the concerns discussed in the medical records relate to an event in 2020 with an unknown officer in a bathroom. Dkt. No. 88-1 at 7. That incident is separate from the 2011-2012 events involving Straks and does not provide a basis to find Straks liable for a specific amount.

Other records state that the plaintiff is dealing with schizophrenia and "complications . . . with a staff member at OSCI." Id. at 9 (record of Jan. 7, 2020 visit). OSCI is Oshkosh Correctional Institution, which is where the

plaintiff was incarcerated when Straks sexually assaulted him. Other pages of his medical records contain the same or similar assessment notes about complications the plaintiff suffered as fallout from the events with Straks, but the records do not name Straks and the specifics of her conduct with the plaintiff are not described. See id. at 10 (record of Oct. 4, 2019), 12 (record of July 2, 2019), 13 (record of Apr. 19, 2019), 14 (record of Dec. 4, 2018), 18 (record of Aug. 8, 2018; mentioning "the Oshkosh situation"), 19 (record of June 19, 2018; more detailed discussion about Oshkosh events), 20 (record of Apr. 20, 2018; plaintiff mentions feeling endangered "due to the PREA report"), 22 (undated report in which the plaintiff discussed "the situation with the staff member at Oshkosh"). Although these records may involve complications the plaintiff suffered as a result of Straks's conduct, none of them shed any light on how much it cost the plaintiff to get the treatment he needed to address the conditions caused by, or exacerbated by, Straks's conduct.

The plaintiff has not provided any other evidence to help the court determine the amount of compensatory damages to a reasonable degree of certainty. He does not say whether he has spent any money on mental or physical health services or other resources to address his lingering symptoms since being released from prison. He has not detailed or described the degree of his continuing harm. He says that he feels "guilt, sorrow, and loneliness," but he does not explain whether those feelings are related to his wife's passing, the loss of his home, his incarceration, Straks's conduct or all of these. His May 12, 2023 letter specifying amounts for the damages he seeks (which he says

should have been docketed as a motion) provides no additional information to justify any amount of compensatory damages, much less the $50 million he lists or the $5 million he seeks for unspecified future treatment. Instead, the letter discusses the foreclosure of the plaintiff's house, which he acknowledges has nothing to do with this case. Dkt. No. 90 at 2.

There is support for holding a hearing to allow the plaintiff to tell the court about his ongoing mental and emotional issues. Jessie v. Wouts, Case No. 17-cv-840 (W.D. Wis., Jan. 31, 2019), is an unpublished case that Attorney Sulton filed in support of his motion for a hearing on damages. Dkt. No. 73. In Jessie, the plaintiff was a former incarcerated person who alleged that a former correctional officer had sexually assaulted him while he was incarcerated. Id. at 1. The plaintiff (who was represented by counsel) moved for default judgment, and the court held a hearing to decide the amount to which the plaintiff was entitled. Id. The plaintiff provided specific testimony in support of his request for damages, which the court found credible. Id. at 2–4. The plaintiff also provided testimony from three witnesses and filed a brief with exhibits in support of his damages request. Id. at 2. The plaintiff cited other cases "as exemplars of appropriate damage awards in civil cases involving sexual assaults." Id. The court detailed the plaintiff's testimony but found that he did not provide evidence of the cost of mental health or substance abuse treatment he sought, nor did he detail any physical injury for which he might be entitled to damages. Id. at 4. The court found that "the only category of compensatory damages to which Jessie is entitled is the mental and emotional pain and

suffering, including the loss of normal life activities, that he has experienced and is reasonably certain to experience in the future." Id. Based on the plaintiff's "testimony and presentation at the hearing," the court awarded the plaintiff compensatory damages of $1.5 million. Id.

Unlike the plaintiff in Jessie, the plaintiff in this case has provided almost no information corroborating his allegations. His letters refer to his "experience" or his "involvement" with Straks without providing additional detail about their encounters. He did not provide statements from other witnesses. As the court has stated, some of the medical records he submitted involve a different incident from 2020. The Jessie case is distinguishable given the significant evidence that the plaintiff in that case provided in support of his request for damages. In comparison, the plaintiff here has not cited any similar cases where a formerly incarcerated plaintiff was awarded compensatory damages of anywhere close to $50 million for similar acts by prison staff.

The plaintiff wants a hearing not so much to provide evidence of a specific dollar amount for medical or other costs—which he has told the court he does not have, dkt. nos. 89 at 3; 93 at 2—but to be able to share with the court the impact that Straks's conduct has had on him. In other words, he wants to tell the court about his mental or emotional injuries. The Prison Litigation Reform Act—42 U.S.C. §1997e(e)—limits an incarcerated person's ability to recover for mental or emotional injuries suffered while in custody. It says, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).” Section 2246(2) of Title 18 defines a “sexual act” to include intercourse. The plaintiff has alleged in the second amended complaint—without dispute from Straks—that Straks “kissed, cuddled, fondled and engaged in various levels of sexual activities, including sexual intercourse and oral sex” with the plaintiff in exam rooms in the Health Services Unit at Oshkosh Correctional. Dkt. No. 40 at ¶51. The court finds that the plaintiff has made a “prior showing of . . . the commission of a sexual act,” as required by 28 U.S.C. §1997e(e). So, although the plaintiff was an incarcerated person at the time he filed this lawsuit and although Straks’s conduct occurred while the plaintiff was an incarcerated person, the court finds that the plaintiff may recover compensatory damages for mental and emotional injuries. He also may recover nominal or punitive damages. See, *e.g.*, Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003).

At the damages hearing, the court will allow the plaintiff to testify about the mental and emotional injuries he has suffered because of *Straks’s* sexual contact with him between July 2011 and July 2012 while the plaintiff was confined at Oshkosh Correctional Institution. He may testify about any mental or emotional injuries resulting from that conduct, even if those injuries continued after July 2012. He may testify about the amount of money that he believes will compensate him for those mental and emotional injuries. But the plaintiff is *not* entitled to damages for other incidents that may have occurred at other times, in other places, with other individuals.

The plaintiff should be prepared for the court to ask him questions at the damages hearing. Once the court has heard the plaintiff's testimony, it will decide what amount, if any, will compensate the plaintiff for any mental and emotional injuries he has proven.

B. Punitive Damages

As the court explained above, the PLRA also allows a plaintiff to recover "punitive" damages. "[A] plaintiff in a § 1983 action can recover punitive damages without any compensatory damages." Carter v. Watson, Case No. 18-CV-727, 2022 WL 2180228, at *5 (E.D. Wis. June 16, 2022) (citing Erwin v. County of Manitowoc, 872 F.2d 1292, 1299 (7th Cir. 1989)). That means that even if the plaintiff is unable to prove that he suffered mental or emotional injuries as a result of Straks's conduct, he still may be entitled to punitive damages if he presents evidence that Straks's conduct was "motivated by evil motive or intent" or that she "had a reckless or callous disregard to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 930 (7th Cir. 2004). The Seventh Circuit has stated that the standard for punitive damages "is the same standard as for § 1983 liability, '[B]oth require a determination that the defendants acted with deliberate indifference or reckless disregard.'" Woodward, 368 F.3d at 930 (quoting Walsh v. Mellas, 837 F.2d 789, 801 (7th Cir. 1988)); see Turner v. Pollard, 564 F. App'x 234, 239 (7th Cir. 2014) (citing Woodward and Walsh and noting that the standard for punitive damages "matches the standard for [an]

underlying Eighth Amendment claim that [a prison official] deliberately endangered [an incarcerated person's] safety").

Although the plaintiff has not yet presented evidence in support of punitive damages, the court previously determined that his "allegations that the defendant consistently sexually assaulted him over more than a year" satisfied the subjective element of an Eighth Amendment claim. Dkt. No. 12 at 5–6 (quoting Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004)) (describing subjective element as requiring a showing that defendant knew plaintiff "'face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it'"). The court found that, "[a]s a prison staff member, the defendant could not help but know that sexually assaulting an inmate (repeatedly) and feeding an inmate illegal drugs was inhumane." Id. at 6. The court found that the allegations in the second amended complaint similarly stated an Eighth Amendment claim against Straks. Dkt. No. 50 at 14–15. Those allegations show that for a year, Straks used her position as a nurse at a correctional institution to take advantage of a susceptible target—an incarcerated person with known drug-addiction issues—to feed her sexual appetite in exchange for drugs. She threatened to cut off the plaintiff or claim he assaulted her if he attempted to report her. Straks's actions caused the plaintiff lasting emotional turmoil and struggles, including estrangement between him and his dying wife. These allegations, which the court has accepted as true, sufficiently show that Straks recklessly or callously disregarded the plaintiff's civil rights.

The court may consider several factors in assessing punitive damages, including "the reprehensibility of Defendant's conduct," "the impact of Defendant's conduct on Plaintiff" and "the relationship between Plaintiff and Defendant." See Seventh Cir. Pattern Civil Jury Instruction §7.28 (available at https://www.ca7.uscourts.gov/pages/LandingPage.php?page=pattern_jury_instructions); Hardy v. City of Milwaukee, 88 F. Supp. 3d 852, 865 (E.D. Wis. 2015). The Supreme Court has instructed that when reviewing an award of punitive damages, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996).

It appears that the plaintiff now seeks $100 million in punitive damages, dkt. no. 90 at 1, although his second amended complaint sought "no less than $100,000" against each named defendant, dkt. no. 40 at p.41. Although the court has found that the plaintiff is entitled to punitive damages against Straks, he has not provided any evidence that would support punitive damages in the extraordinary amount of $100 million dollars. At the damages hearing, the plaintiff may testify about the reprehensible nature of Straks's behavior, the relationship between Straks and the plaintiff and the effect of her conduct on the plaintiff. The court then will determine a reasonable amount of punitive damages.

C. Other Defendants

The court concludes by addressing a recurring issue. In his letters, the plaintiff persists in his belief that the State of Wisconsin, the DOC or TotalMed Staffing should be held responsible for Straks's actions. The court repeatedly has explained to the plaintiff why he has no claim against the State, the DOC or TotalMed Staffing. The purported insurance documents he filed are not relevant because neither the DOC nor Oshkosh Correctional Institution is a defendant, and neither may be held liable for Straks's actions. Mediation would not involve the State and would not be beneficial because Straks is the only defendant, and she has repeatedly told the court that she has no money with which to pay any settlement. It also seems unlikely that she would agree to participate in a mediation given her refusal to defend against this lawsuit, and the court will not order her to participate in what would certainly be an unsuccessful mediation conference.

## III. Plaintiff's Motion to Clarify (Dkt. No. 96)

As the court has explained, on June 18, 2025, the court received from the plaintiff a document stating that if it was not "appropriate" for him to send the "Racine court record's as exhibits," he'd like the court to ignore them or file them in Case No. 22-cv-595-pp. Dkt. No. 96. The court does not know what "Racine court records" the plaintiff is referencing. In September of 2023, the court received a brief from the plaintiff; although the brief was docketed in this case, the plaintiff contacted the clerk's office and advised that it should have been filed in Case No. 22-cv-595. Dkt. No. 92. The clerk's office *did* file that

document in the 2022 case. Between September 2023 and the receipt of this motion in June 2025, the court did not receive any "Racine court documents" from the plaintiff. The court will deny this motion as unnecessary.

## IV.    Plaintiff's Motion to Appoint Counsel (Dkt. No. 99)

Finally, the court will deny the plaintiff's June 2025 motion to appoint counsel. As it told the plaintiff when he fired Attorney Sulton, the court will not attempt to recruit another attorney to represent him. The court recruited an attorney for the plaintiff, but the plaintiff expressed dissatisfaction with that attorney and asked the court to remove him. The plaintiff promptly hired his own attorney, then fired that attorney when the plaintiff insisted that the attorney was not representing the plaintiff's interests (despite record evidence to the contrary). When the court allowed the plaintiff to fire the second attorney, it told the plaintiff that it would not recruit him another lawyer. The plaintiff says that he unsuccessfully attempted to hire an attorney on his own. The court will not expend additional resources to attempt to recruit a third attorney for the plaintiff, especially when the plaintiff's past conduct casts significant doubt on whether he would follow that attorney's advice or cooperate with that attorney to finish out the damages portion of the case.

## V.    Conclusion

The court **GRANTS** the plaintiff's request for a hearing on damages. Dkt. No. 89.

The court **DENIES AS UNNECESSARY** the plaintiff's motion to clarify. Dkt. No. 96.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 99.

The court **ORDERS** that the parties must appear for a telephonic damages hearing on October 1, 2025 at 10:00 AM. The parties are to appear by calling the court's conference line at 551-285-1373 and entering Meeting ID 161 4901 8989 and Passcode 190021 when prompted.

As of the date of this order, the plaintiff is incarcerated at the Racine County Jail. The court will work with the jail to make arrangements for the plaintiff's appearance at the October 1, 2025 hearing. The court **ORDERS** that by the end of the day on September 22, 2025 the plaintiff must notify the court whether he still is at the Racine County Jail or whether he has been released or transferred to another institution. If he has been released, he is responsible for calling in for the October 1 hearing. If he has been transferred to another institution, the court will try to coordinate with that institution for the plaintiff's appearance at the hearing.

Dated in Milwaukee, Wisconsin this 25th day of July, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**